FILED
2021 Nov-05  AM 11:16
U.S. DISTRICT COURT
N.D. OF ALABAMA

# **EXHIBIT A**

**ALABAMA SJIS CASE DETAIL**

PREPARED FOR: LESLIE K. EASON



County: **63**   Case Number: **CV-2021-900865.00**   Court Action:
Style: **GILIA WILDER ET AL V. GENIE HEALTHCARE, INC. ET AL**

Real Time

## Case Action Summary

| Date: | Time | Code | Comments | Operator |
|---|---|---|---|---|
| 9/29/2021 | 12:17 PM | ECOMP | COMPLAINT E-FILED. | BOO038 |
| 9/29/2021 | 12:17 PM | FILE | FILED THIS DATE: 09/29/2021          (AV01) | AJA |
| 9/29/2021 | 12:17 PM | EORD | E-ORDER FLAG SET TO "Y"          (AV01) | AJA |
| 9/29/2021 | 12:17 PM | ASSJ | ASSIGNED TO JUDGE: DANIEL F PRUET          (AV01) | AJA |
| 9/29/2021 | 12:17 PM | TDMJ | JURY TRIAL REQUESTED          (AV01) | AJA |
| 9/29/2021 | 12:17 PM | ORIG | ORIGIN: INITIAL FILING          (AV01) | AJA |
| 9/29/2021 | 12:17 PM | SCAN | CASE SCANNED STATUS SET TO: N          (AV01) | AJA |
| 9/29/2021 | 12:17 PM | STAT | CASE ASSIGNED STATUS OF: ACTIVE          (AV01) | AJA |
| 9/29/2021 | 12:17 PM | C001 | INDIGENT FLAG SET TO: N          (AV02) | AJA |
| 9/29/2021 | 12:17 PM | C001 | LISTED AS ATTORNEY FOR C001: KEMMER ERICA KATHLEE | AJA |
| 9/29/2021 | 12:17 PM | C001 | C001 E-ORDER FLAG SET TO "Y"          (AV02) | AJA |
| 9/29/2021 | 12:17 PM | C001 | C001 PARTY ADDED: WILDER GILIA          (AV02) | AJA |
| 9/29/2021 | 12:17 PM | C002 | INDIGENT FLAG SET TO: N          (AV02) | AJA |
| 9/29/2021 | 12:17 PM | C002 | LISTED AS ATTORNEY FOR C002: KEMMER ERICA KATHLEE | AJA |
| 9/29/2021 | 12:17 PM | C002 | C002 PARTY ADDED: WARREN PATRICK          (AV02) | AJA |
| 9/29/2021 | 12:17 PM | C002 | C002 E-ORDER FLAG SET TO "Y"          (AV02) | AJA |
| 9/29/2021 | 12:17 PM | D001 | D001 PARTY ADDED: GENIE HEALTHCARE, INC.   (AV02) | AJA |
| 9/29/2021 | 12:17 PM | D001 | LISTED AS ATTORNEY FOR D001: PRO SE          (AV02) | AJA |
| 9/29/2021 | 12:17 PM | D001 | CERTIFIED MAI ISSUED: 09/29/2021 TO D001   (AV02) | AJA |
| 9/29/2021 | 12:17 PM | D001 | INDIGENT FLAG SET TO: N          (AV02) | AJA |
| 9/29/2021 | 12:17 PM | D001 | D001 E-ORDER FLAG SET TO "Y"          (AV02) | AJA |
| 9/29/2021 | 12:17 PM | D002 | LISTED AS ATTORNEY FOR D002: PRO SE          (AV02) | AJA |
| 9/29/2021 | 12:17 PM | D002 | CERTIFIED MAI ISSUED: 09/29/2021 TO D002   (AV02) | AJA |
| 9/29/2021 | 12:17 PM | D002 | INDIGENT FLAG SET TO: N          (AV02) | AJA |
| 9/29/2021 | 12:17 PM | D002 | D002 PARTY ADDED: NADIPELLY VENKAT          (AV02) | AJA |
| 9/29/2021 | 12:17 PM | D002 | D002 E-ORDER FLAG SET TO "Y"          (AV02) | AJA |
| 9/29/2021 | 12:17 PM | D003 | LISTED AS ATTORNEY FOR D003: PRO SE          (AV02) | AJA |
| 9/29/2021 | 12:17 PM | D003 | CERTIFIED MAI ISSUED: 09/29/2021 TO D003   (AV02) | AJA |
| 9/29/2021 | 12:17 PM | D003 | D003 E-ORDER FLAG SET TO "Y"          (AV02) | AJA |
| 9/29/2021 | 12:17 PM | D003 | D003 PARTY ADDED: AYA HEALTHCARE, INC.   (AV02) | AJA |
| 9/29/2021 | 12:17 PM | D003 | INDIGENT FLAG SET TO: N          (AV02) | AJA |
| 9/29/2021 | 12:17 PM | D004 | CERTIFIED MAI ISSUED: 09/29/2021 TO D004   (AV02) | AJA |
| 9/29/2021 | 12:18 PM | D004 | D004 E-ORDER FLAG SET TO "Y"          (AV02) | AJA |
| 9/29/2021 | 12:18 PM | D004 | D004 PARTY ADDED: BRAYMIN ALAN          (AV02) | AJA |
| 9/29/2021 | 12:18 PM | D004 | INDIGENT FLAG SET TO: N          (AV02) | AJA |
| 9/29/2021 | 12:18 PM | D004 | LISTED AS ATTORNEY FOR D004: PRO SE          (AV02) | AJA |
| 9/29/2021 | 12:18 PM | D005 | INDIGENT FLAG SET TO: N          (AV02) | AJA |
| 9/29/2021 | 12:18 PM | D005 | LISTED AS ATTORNEY FOR D005: PRO SE          (AV02) | AJA |
| 9/29/2021 | 12:18 PM | D005 | D005 PARTY ADDED: DCH HEALTHCARE AUTHORITY DCH | AJA |
| 9/29/2021 | 12:18 PM | D005 | CERTIFIED MAI ISSUED: 09/29/2021 TO D005   (AV02) | AJA |
| 9/29/2021 | 12:18 PM | D005 | D005 E-ORDER FLAG SET TO "Y"          (AV02) | AJA |

| 9/29/2021 | 2:14 PM | ESCAN | SCAN - FILED 9/29/2021 - SUMMONS ISSUED | ALL |
|---|---|---|---|---|
| 10/6/2021 | 1:04 PM | D005 | SERVICE OF CERTIFIED MAI ON 10/06/2021 FOR D005 | ALL |
| 10/6/2021 | 1:04 PM | ESERC | SERVICE RETURN | ALL |
| 10/8/2021 | 1:56 PM | D002 | SERVICE OF CERTIFIED MAI ON 10/08/2021 FOR D002 | ALL |
| 10/8/2021 | 1:57 PM | ESERC | SERVICE RETURN | ALL |
| 10/8/2021 | 1:58 PM | D001 | SERVICE OF CERTIFIED MAI ON 10/08/2021 FOR D001 | ALL |
| 10/8/2021 | 1:58 PM | ESERC | SERVICE RETURN | ALL |
| 10/12/2021 | 4:58 PM | D003 | SERVICE OF CERTIFIED MAI ON 10/05/2021 FOR D003 | KRM |
| 10/12/2021 | 4:58 PM | ESERC | SERVICE RETURN | KRW |
| 10/12/2021 | 4:59 PM | D004 | SERVICE OF CERTIFIED MAI ON 10/12/2021 FOR D004 | KRM |
| 10/12/2021 | 4:59 PM | ESERC | SERVICE RETURN | KRW |
| 11/3/2021 | 2:15 PM | EMOT | D005-MOTN TO DIS. PURS. TO RULE 12(B) FILED. | TOM013 |
| 11/3/2021 | 2:17 PM | D005 | LISTED AS ATTORNEY FOR D005: TOMPKINS TERRI OLIVE | AJA |
| 11/3/2021 | 2:17 PM | EMOT | D005-MOTN TO DIS. PURS. TO RULE 12(B) /DOCKETED | LAA |
| 11/4/2021 | 11:50 AM | DAT1 | FOR: MOTION TO DISMISS ON 11/23/2021 @ 0400P(AV01) | SHC |
| 11/4/2021 | 11:51 AM | JEMOT | D005-MOTN TO DIS. PURS. TO RULE 12(B) /SET FOR 11/23/2021 04:00 PM, LOCATION = 7TH FLOOR | |

 **END OF THE REPORT**



AlaFile E-Notice ·

63-CV-2021-900865.00

To: VENKAT NADIPELLY
104 INTERCHANGE PLAZA
MONROE, NJ, 08831

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF TUSCALOOSA COUNTY, ALABAMA

GILIA WILDER ET AL V. GENIE HEALTHCARE, INC. ET AL
63-CV-2021-900865.00

The following complaint was FILED on 9/29/2021 12:17:21 PM

Notice Date:     9/29/2021 12:17:21 PM

MAGARIA HAMNER BOBO
CIRCUIT COURT CLERK
TUSCALOOSA COUNTY, ALABAMA
714 GREENSBORO AVENUE
TUSCALOOSA, AL, 35401

205-349-3870
magaria.bobo@alacourt.gov

| State of Alabama | **SUMMONS** | **Court Case Number** |
|---|---|---|
| Unified Judicial System | **- CIVIL -** | 63-CV-2021-900865.00 |
| Form C-34  Rev. 4/2017 | | |

**IN THE CIRCUIT COURT OF TUSCALOOSA COUNTY, ALABAMA**
**GILIA WILDER ET AL V. GENIE HEALTHCARE, INC. ET AL**

NOTICE TO: VENKAT NADIPELLY, 104 INTERCHANGE PLAZA, MONROE, NJ 08831

*(Name and Address of Defendant)*

THE COMPLAINT OR OTHER DOCUMENT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT, AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT OR OTHER DOCUMENT, WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE PLAINTIFF(S) OR ATTORNEY(S) OF THE PLAINTIFF(S),
Erica Kathleen Kemmer                                                                                                                               .

*[Name(s) of Attorney(s)]*

WHOSE ADDRESS(ES) IS/ARE: PO Box 461, Greensboro, AL 36744                                                                                       .

*[Address(es) of Plaintiff(s) or Attorney(s)]*

THE ANSWER MUST BE MAILED OR DELIVERED WITHIN 30 DAYS AFTER THIS SUMMONS AND COMPLAINT OR OTHER DOCUMENT WERE SERVED ON YOU OR A JUDGMENT BY DEFAULT MAY BE RENDERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT OR OTHER DOCUMENT.

**TO ANY SHERIFF OR ANY PERSON AUTHORIZED BY THE ALABAMA RULES OF CIVIL**
**PROCEDURE TO SERVE PROCESS:**

☐ You are hereby commanded to serve this Summons and a copy of the Complaint or other document in
this action upon the above-named Defendant.

☑ Service by certified mail of this Summons is initiated upon the written request of GILIA WILDER
pursuant to the Alabama Rules of the Civil Procedure.                                                                    *[Name(s)]*

| 09/29/2021 | /s/ MAGARIA HAMNER BOBO | By: | |
|---|---|---|---|
| *(Date)* | *(Signature of Clerk)* | | *(Name)* |

☑ Certified Mail is hereby requested.        /s/ Erica Kathleen Kemmer
                                             *(Plaintiff's/Attorney's Signature)*

**RETURN ON SERVICE**

☐ Return receipt of certified mail received in this office on _____ .
                                                                                            *(Date)*

☐ I certify that I personally delivered a copy of this Summons and Complaint or other document to _____

_____ in _____ County,
*(Name of Person Served)*                                        *(Name of County)*

Alabama on _____ .
                     *(Date)*

                                                                          _____
                                                                          *(Address of Server)*

_____          _____
*(Type of Process Server)*                       *(Server's Signature)*

                                          _____          _____
                                          *(Server's Printed Name)*                        *(Phone Number of Server)*

DOCUMENT 1

ELECTRONICALLY FILED
9/29/2021 12:17 PM
63-CV-2021-900865.00
CIRCUIT COURT OF
TUSCALOOSA COUNTY, ALABAMA
MAGARIA HAMNER BOBO, CLERK

| State of Alabama<br>Unified Judicial System<br><br>Form ARCiv-93   Rev. 9/18 | **COVER SHEET**<br>**CIRCUIT COURT - CIVIL CASE**<br>(Not For Domestic Relations Cases) | Ca:<br>63<br>Date of Filing:   Judge Code:<br>09/29/2021 |
|---|---|---|

## GENERAL INFORMATION

### IN THE CIRCUIT COURT OF TUSCALOOSA COUNTY, ALABAMA
GILIA WILDER ET AL v. GENIE HEALTHCARE, INC. ET AL

**First Plaintiff:** ☐ Business   ☑ Individual
☐ Government   ☐ Other

**First Defendant:** ☑ Business   ☐ Individual
☐ Government   ☐ Other

**NATURE OF SUIT:** Select primary cause of action, by checking box (check only one) that best characterizes your action:

**TORTS: PERSONAL INJURY**

- ☐ WDEA - Wrongful Death
- ☐ TONG - Negligence: General
- ☐ TOMV - Negligence: Motor Vehicle
- ☐ TOWA - Wantonness
- ☐ TOPL - Product Liability/AEMLD
- ☐ TOMM - Malpractice-Medical
- ☐ TOLM - Malpractice-Legal
- ☐ TOOM - Malpractice-Other
- ☐ TBFM - Fraud/Bad Faith/Misrepresentation
- ☑ TOXX - Other:

**TORTS: PERSONAL INJURY**

- ☐ TOPE - Personal Property
- ☐ TORE - Real Property

**OTHER CIVIL FILINGS**

- ☐ ABAN - Abandoned Automobile
- ☐ ACCT - Account & Nonmortgage
- ☐ APAA - Administrative Agency Appeal
- ☐ ADPA - Administrative Procedure Act
- ☐ ANPS - Adults in Need of Protective Service

**OTHER CIVIL FILINGS (cont'd)**

- ☐ MSXX - Birth/Death Certificate Modification/Bond Forfeiture Appeal/<br>Enforcement of Agency Subpoena/Petition to Preserve
- ☐ CVRT - Civil Rights
- ☐ COND - Condemnation/Eminent Domain/Right-of-Way
- ☐ CTMP - Contempt of Court
- ☐ CONT - Contract/Ejectment/Writ of Seizure
- ☐ TOCN - Conversion
- ☐ EQND - Equity Non-Damages Actions/Declaratory Judgment/<br>Injunction Election Contest/Quiet Title/Sale For Division
- ☐ CVUD - Eviction Appeal/Unlawful Detainer
- ☐ FORJ - Foreign Judgment
- ☐ FORF - Fruits of Crime Forfeiture
- ☐ MSHC - Habeas Corpus/Extraordinary Writ/Mandamus/Prohibition
- ☐ PFAB - Protection From Abuse
- ☐ EPFA - Elder Protection From Abuse
- ☐ QTLB - Quiet Title Land Bank
- ☐ FELA - Railroad/Seaman (FELA)
- ☐ RPRO - Real Property
- ☐ WTEG - Will/Trust/Estate/Guardianship/Conservatorship
- ☐ COMP - Workers' Compensation
- ☐ CVXX - Miscellaneous Circuit Civil Case

**ORIGIN:**   F ☑ INITIAL FILING

A ☐ APPEAL FROM<br>DISTRICT COURT

O ☐ OTHER

R ☐ REMANDED

T ☐ TRANSFERRED FROM<br>OTHER CIRCUIT COURT

**HAS JURY TRIAL BEEN DEMANDED?**   ☑ YES ☐ NO

Note: Checking "Yes" does not constitute a demand for a
jury trial. (See Rules 38 and 39, Ala.R.Civ.P. for procedure)

**RELIEF REQUESTED:**   ☑ MONETARY AWARD REQUESTED ☐ NO MONETARY AWARD REQUESTED

**ATTORNEY CODE:**

BOO038

9/29/2021 12:17:19 PM
Date

/s/ Erica Kathleen Kemmer
Signature of Attorney/Party filing this form

**MEDIATION REQUESTED:**   ☐ YES ☐ NO ☑ UNDECIDED

Election to Proceed under the Alabama Rules for Expedited Civil Actions:   ☐ YES ☐ NO

Case 7:21-cv-01480-LSC  Document 1-1  Filed 11/04/21  Page 7 of 43



ELECTRONICALLY FILED
9/29/2021 12:17 PM
63-CV-2021-900865.00
CIRCUIT COURT OF
TUSCALOOSA COUNTY, ALABAMA
MAGARIA HAMNER BOBO, CLERK

## IN THE CIRCUIT COURT OF TUSCALOOSA COUNTY, ALABAMA

| | |
|---|---|
| **GILIA WILDER and** | * |
| **PATRICK WARREN,** | * |
| **Plaintiffs,** | * |
| | * |
| **vs.** | * **CASE NO.: CV-2021-_____** |
| | * |
| **GENIE HEALTHCARE, Inc.,** | * |
| **VENKAT NADIPELLY,** | * |
| **AYA HEALTHCARE, INC.,** | * |
| **ALAN BRAYMIN, THE DCH HEALTH** | * |
| **CARE AUTHORITY, et al.,** | * |
| **Defendants.** | * |

### VERIFIED COMPLAINT

Come now, the PLAINTIFFS, Gilia Wilder and Patrick Warren, by and through their attorney, Erica K. Kemmer, and file this complaint seeking relief in both contract and tort, against above-named DEFENDANTS jointly and severally, and would show unto the Court as follows:

### JURISDICTION AND VENUE

**1. SUBJECT MATTER JURISDICTION** of this civil action is proper in this Court, as the matter in controversy exceeds $20,000, and a jury trial is requested by PLAINTIFFS, pursuant to Rule 38 of the Alabama Rules of Civil Procedure.

**2. PERSONAL JURISDICTION** of this civil action is proper in this Court, pursuant to Rule 82 of the Alabama Rules of Civil Procedure, as the County of Tuscaloosa is where the performance on the contract between PLAINTIFF and DEFENDANT Genie Healthcare (hereafter Genie) was to take place. Tuscaloosa County is the location of DEFENDANT DCH Health Care Authority (hereafter DCH), where PLAINTIFF Wilder was to continue to be placed as an ICU travel nurse, pursuant to the contract between herself and Genie. It is the location where the contract to which

PLAINTIFF Wilder is an intended beneficiary, failed to be properly delivered. DEFENDANT Genie has availed itself of this jurisdiction, recruiting employees within the County of Tuscaloosa and other counties in the State of Alabama, for placement in travel nurse positions in these same areas. DEFENDANT Aya Healthcare, Inc. (hereafter Aya), works directly with DCH, thus availing itself of business within the jurisdiction.

**3. VENUE** of this civil action is proper in this Court, as the case regards a breach of contract, a personal injury due to the tort of negligence, loss of consortium between spouses- derivative of the personal injury tort of negligence, and a breach of fiduciary duty. Performance on the contract was to take place in Tuscaloosa County. The personal injury, due to the tort of negligence, manifested itself in Tuscaloosa County. Rule 82 of the Alabama Rules of Civil Procedure, specific to venue of actions against nonresident individuals, states such actions may be brought in the county where the subject of the action or portion of the same was when the claim for relief arose or the act on which the action is founded occurred or was to be performed. Regarding venue of actions against foreign and domestic corporations, all civil actions may be brought in any county in which a substantial part of the events or omissions giving rise to the claim occurred. *(AL Code §6-3-7 (2020)).*

## PARTIES

1.  PLAINTIFF, Gilia Wilder, is a U.S. citizen, residing at 209 Kingston Circle, Birmingham, Alabama, 35211; and is over the age of nineteen (19) years.

2.  PLAINTIFF, Patrick Warren, is a U.S. citizen, residing at 209 Kingston Circle, Birmingham, Alabama, 35211; and is over the age of nineteen (19) years.

2.  DEFENDANT, Genie Healthcare, Inc. is a U.S.-based national healthcare staffing organization, operating in 50 states as a domestic profit corporation, and listing its principal place of business as 104 Interchange Plaza, Monroe, New Jersey, 08831.

3.  DEFENDANT, Venkat Nadipelly, is president and chief executive officer, for Genie Healthcare, Inc.

3.    DEFENDANT, Aya Healthcare, Inc., is a U.S.-based national healthcare staffing and vendor management organization, operating domestically and listing its principal place of business as: 5930 Cornerstone Court West, Suite 300, San Diego, California, 92121.

4.    DEFENDANT, Alan Braymin, is president and chief executive officer for Aya Healthcare.

5.    DEFENDANT, The DCH Health Care Authority is a domestic, non-profit corporation, listing its principal place of business as: 809 University Blvd. East, Tuscaloosa, Alabama, 35401

## STATEMENT OF FACTS

I.     PLAINTIFFS, Gilia Wilder and Patrick Warren, legal spouses, bring this action as a result of DEFENDANTS' failure to perform a valid master travel assignment contract between the Defendants and Plaintiff Wilder. The aforementioned contract created a 13-week extension period of employment between PLAINTIFF Wilder and Genie Healthcare, Inc., (hereafter Genie) for work as an Intensive Care Unit (ICU) travel nurse with placement at DCH in the City of Tuscaloosa, County of Tuscaloosa, State of Alabama. This extension contract began January 17, 2021, and included a crisis pay rate, as this was during the height of the COVID-19 pandemic.

II.    DEFENDANTS did breach this contract after beginning performance. The valid contract included an offer, acceptance, capacity of all parties to contract, consideration by parties, and intention of all to enter said contract. It was signed by both Gilia Wilder and Venkat Nadipelly, Genie's president and chief executive officer, on January 21, 2021.

III.   PLAINTIFFS attest that, under this extension contract between Wilder and Genie, performance on the part of Genie did begin on or about February 5, 2021, with Wilder receiving the new, agreed-upon rate of pay. Performance continued with weekly paychecks issued at this level of pay through March 5, 2021. Payment to Wilder through these five weeks was at the promised and validly contracted-for rate of $93 per hour. This created reliance in the contract on the part of PLAINTIFFS.

IV.     PLAINTIFFS now seek damages for lost wages over the unpaid remainder of the contract
        period, a promised loyalty bonus, added travel expenses, attorney fees to date, fertility
        treatments taken in reliance on Wilder's placement at a local hospital, loss of consortium
        between spouses, and mental anguish.

V.      PLAINTIFF Wilder, in response to a request from her Genie recruiter, did agree to sign,
        and then did sign, a second, 13-week extension travel nurse contract to work at DCH. She
        signed this contract early, after she was told by her Genie recruiter that doing so would
        lock in a crisis pay rate for 13 weeks. This extension, she was told, would be effective
        January 17, 2021, through May 29, 2021. Her job position at DCH was as an ICU travel
        nurse.

VI.     PLAINTIFF Wilder states that on or about February 25, 2021, she was contacted by her
        DCH unit manager and informed that her extension contract for the period January 17,
        2021, through May 29, 2021, had not been received by DCH. Wilder immediately
        reached out to her Genie recruiter who assured Wilder that she would look into the matter
        and would get back to Wilder with an explanation. Wilder followed up this same day to
        ask if the matter had been rectified. At this time, Wilder was advised that DCH had
        canceled her contract and had given no reason for doing so. Wilder was told three (3)
        days before her contract cancellation took effect.

VII.    PLAINTIFF Wilder attests that she was told by DCH personnel that her contract had
        been sent to the wrong party, and that by the time the mistake was caught, it was too late
        for DCH to accept the contract. Because DCH did not receive her contract extension in a
        timely manner and by their deadline--a deadline all DEFENDANTS had a duty to be
        aware of--Wilder's placement was canceled through no fault of her own. Wilder avers
        that in her discussions with DCH, she was assured DCH was happy with her work and
        wanted her back, but that the third-party error cost her the placement due to her contract
        not being delivered properly or on time.

IIX.    PLAINTIFF Wilder says that both her Genie recruiter and her DCH unit manager were
        aware that she had started fertility treatments while in her first contract extension and that
        she was currently in her second round of fertility treatments. These actions were taken in
        reliance on the contract she signed on January 21, 2021, promising her continued

placement at DCH for a period from January 17, 2021, through May 29, 2021. DCH was clearly aware of these fertility treatments, and DCH staff had worked with Wilder to allow her time to attend required appointments with her fertility doctor.

IX. PLAINTIFF Wilder, upon finding that Genie would not honor its employment agreement with her, began to look for other employment in order to mitigate damages. Her contract with Genie limited her employment options because the contract terms prohibited her from taking a direct position with DCH, if one were available, for twelve (12) months after any contract with Genie terminated.

- Specifically, the master travel assignment contract, signed by Wilder and Venkat Nadipelly of Genie, on January 21, 2021, states under the subheading "OTHER ASSIGNMENT TERMS":

  *"Traveler will not accept a position with any Facility or the Vendor including Vendor Management System that Traveler was referred to by GENIE during this contract including extensions and for a period of twelve (12) months after the date of Traveler's last contract with said Facility, no matter who may introduce Traveler to the same Facility at a later date. GENIE has incurred substantial expense in maintaining personnel/temporary staff and Traveler hereby agrees in consideration of Genie providing Traveler with referral and/or placement services on a temporary, permanent or consultative basis that Traveler will not without GENIE's prior written consent accept a payroll, consulting, temporary or permanent position, or one of similar nature, directly or indirectly with the Facility that Traveler was referred to by GENIE for six (6) months from the date of last employment."*

X. PLAINTIFF Wilder began a job in the Atlanta, Georgia area effective on or about March 22, 2021, after approximately a month without work. The differences in wages, flexibility, and overall value of the contract were significant as compared to the DCH contract. This change also meant that Wilder and Plaintiff Warren would have to put plans for a family on hold and would be forced to spend time separated from one another. PLAINTIFFS aver that the stress of Wilder being unemployed for a month, along with the disappointing realization that she and her husband would be unable to continue

fertility treatments, contributed to the couple's inability to conceive. The foreseeable concerns that were created regarding the couple's financial future, their plans to have children, and their ability to be together as a couple have been devastating and continue to impact them and should be given all due consideration in this case.

## CAUSES OF ACTION

### A. COUNT ONE: BREACH OF CONTRACT

1. DEFENDANTS breached, or caused to be breached, a signed employment contract between Genie and PLAINTIFF, Gilia Wilder.

2. With regards to this contract, there was a mutual assent to terms essential to form a contract.

3. All parties at the time of the signing of the contract did understand and accept all essential terms to the contract.

4. A valid offer was made to Wilder by Genie to enter into a contract extension as an ICU travel nurse, to last January 17, 2021, through May 29, 2021, with placement at DCH.

5. Wilder accepted this offer from Genie by signing the offered contract.

6. Genie president and CEO, Venkat Nadipelly, signed the same contract as Wilder.

7. The signed employment contract between parties was dated January 21, 2021.

8. All parties to the contract had capacity to enter the contract, extended consideration, and intended to enter said agreement.

9. Wilder promised and was prepared to perform under this agreement.

10. Actual performance began on the contract extension, with Genie paying Wilder under the new contract and its terms from February 5, 2021, through March 5, 2021, before abruptly stopping performance.

11. On or about February 26, 2021, Genie informed Wilder her contract for placement at DCH would not be honored.

12. As a result of the breach of contract, PLAINTIFFS have suffered expectation and reliance damages.

## B. **COUNT TWO: RELIANCE ON A CONTRACTUAL PROMISE**

1. PLAINTIFFS incorporate each and every allegation as set forth hereinabove and repeat and reallege such averments hereinafter with force and effect.

2. PLAINTIFFS Gilia Wilder and Patrick Warren took specific actions in reliance on the contract executed between Wilder and Genie on January 21, 2021. The spouses made a decision to continue to pay for and to undergo fertility treatments in hopes they would conceive a child, creating a reliance interest in performance of the contract between PLAINTIFFS and DEFENDANTS.

3. Fertility treatments require frequent doctor visits, in some cases daily, to monitor the process. Ultrasounds and blood work are often done every few days.

4. Conception during fertility treatments requires spouses to be together at specific times during the ovulation process.

5. Wilder's work schedule with DCH had been arranged to allow her time to visit doctors regarding these fertility treatments.

6. Wilder's placement at DCH allowed her to be home with her husband every night.

7. Wilder and Warren relied on the contract and the promise between Wilder and Genie when they decided to continue to pursue fertility treatments.

8. When Genie breached its contract with Wilder for placement as an ICU travel nurse at DCH, Wilder and Warren were forced to end fertility treatments because they felt they could no longer afford them, and because there was no guarantee that Wilder would be able to find work in close enough proximity to her home and her doctors to continue the process.

9. As a result of both the breach of contract and the negligent handling of the contract, PLAINTIFFS suffered reliance damages.

## C. **COUNT THREE: INTENDED BENEFICIARY**

1. PLAINTIFFS incorporate each and every allegation as set forth hereinabove and repeat and reallege such averments hereinafter with force and effect.

2. Gilia Wilder is an intended third-party beneficiary of any and all promise(s) and contracts between all DEFENDANTS, jointly and severally, that pertain to Wilder's employment contract during this period. This includes contracts or

promises that in any way touch Genie's contractual obligations to Wilder,
between any and all of the following: Genie, Venkat Nadipelly, Aya Healthcare,
Inc., Alan Braymin, and DCH.

3.  A third-party beneficiary (intended beneficiary) is someone who is not a party to
    the contract but will benefit from its performance.

4.  If the beneficiary would be reasonable in relying on the promise as manifesting an
    intention to confer a right on him, he is an intended beneficiary. (*Restatement 2ⁿᵈ
    Section 302*).

5.  Wilder's rights as an intended beneficiary are in no way tied to the way
    DEFENDANTS choose to identify themselves, whether as "agent", as
    "independent contractor", as "joint employer", etc.

6.  As an intended beneficiary, no privity of contract nor consideration between
    Wilder and any of the DEFENDANTS is necessary for liability.

7.  A fiduciary relationship exists between all DEFENDANTS, as well as between
    DEFENDANTS and PLAINTIFFS.

8.  Wilder's intended-beneficiary rights are tied solely to the contract(s) from which
    she was intended to benefit.

9.  Broad remedial protections exist to recognize a third-party beneficiary who relies
    on a contract, as the "power of contracting parties to vary or eliminate an intended
    beneficiary to enforce the contract terminates when the intended beneficiary
    changes his position in justifiable reliance". (*Restatement 2ⁿᵈ Section 311*).

10. Wilder relied on the contract(s) between DEFENDANTS, was a third-party
    beneficiary, and is entitled to damages under contracts between DEFENDANTS
    as an intended beneficiary.

11. As a result of Wilder's intended beneficiary status, and the failure of
    DEFENDANTS to perform, PLAINTIFFS suffered reliance damages, expectation
    damages and mental anguish.

## D. **COUNT FOUR: NEGLIGENCE**

1.  PLAINTIFFS incorporate each and every allegation as set forth hereinabove and
    repeat and reallege such averments hereinafter with force and effect.

2. PLAINTIFFS Gilia Wilder and Patrick Warren bring this action for personal tort injury, due to negligence, under Alabama Personal Injury and Torts per duty imposed by contract. *(1 Ala. Pers. Inj. & Torts § 1:4 (2020 ed.).*

3. DEFENDANTS did undertake to perform the contract between Wilder and Genie, and that performance was done negligently, failing to meet the reasonable duty of care expected of DEFENDANTS.

4. DEFENDANTS' handling of the contract between PLAINTIFF Wilder and Genie was an affirmative act giving rise to a duty to the intended beneficiary of the contract, who was and is Wilder.

5. This affirmative duty began when DEFENDANTS, jointly and severally, undertook to perform the contract between Wilder and Genie, for a term lasting from January 17, 2021, through May 29, 2021.

6. The performance of DEFENDANTS with regard to this contract was negligent and failed to meet a reasonable level of care.

7. A reasonable level of care in performing the contract would have included a means of verifying whether Wilder's employment contract was received in a timely and proper manner by DCH.

8. Failure by the Defendants to meet this reasonable level of care was the actual and proximate cause of damages to PLAINTIFFS, in terms of expectation, reliance, mental anguish, and pain and suffering.

9. This failure falls under *res ipsa loquitur*, which permits an inference that the known act which produced the injury was a negligent act. *(1 Ala. Pers. Inj. & Torts § 1:20 (2020 ed.).*

10. Standard operating procedure for DEFENDANTS, given their areas of work and their professional levels of fiduciary accountability, should reasonably include a system of checks to ensure that all contracts they are charged with handling between parties are delivered in a timely and proper manner.

11. *Res ipsa loquitur* requires that DEFENDANTS had full management and control of the instrumentality that caused the injury—here, that is the contract(s) between DEFENDANTS pertaining to Wilder's employment and placement at DCH as an ICU travel nurse for the period January 17, 2021, through May 29, 2021, which

was not delivered in a timely or proper manner.

12. *Res ipsa loquitur* requires that the "accident" could not have happened if those
with control (DEFENDANTS) had not been negligent.

13. *Res ipsa loquitur* requires that PLAINTIFFS' injury resulted from the accident.

14. But for DEFENDANTS' negligent handling of the signed contract between
Wilder and Genie, PLAINTIFFS would not have suffered injury.

15. Under Alabama Personal Injury Law regarding negligent performance, once
performance is undertaken, and it is negligent, this gives rise to an action in tort.

## E. COUNT FIVE: LOSS OF CONSORTIUM

1. PLAINTIFFS incorporate each and every allegation as set forth hereinabove and
repeat and reallege such averments hereinafter with force and effect.

2. PLAINTIFFS Gilia Wilder and Patrick Warren bring this action for loss of
consortium, a foreseeable result of the negligent handling of Wilder's travel nurse
contract by DEFENDANTS, jointly and severally.

3. Under Alabama law, "consortium" is generally defined as the companionship,
company, sexual relations, comfort, and assistance that a husband/wife provides
to their spouse.

4. Loss of consortium is derivative of the claims of the underlying personal injury
action of the injured spouse, Wilder, noted above. *(Ex parte Progress Rail Servs.
Corp., 869 So. 2d 459 (Ala. 2003).*

5. Although a derivative claim, this cause of action is independent for purposes of
damages.

6. PLAINTIFFS' consortium claims results from DEFENDANTS' failure to fulfill
their duties under the above-noted personal injury action.

## F. COUNT SIX: BREACH OF FIDUCIARY DUTY BY GENIE HEALTHCARE

1. PLAINTIFFS incorporate each and every allegation as set forth hereinabove and
repeat and reallege such averments hereinafter with force and effect.

2. PLAINTIFFS assert that Genie had a fiduciary relationship with Gilia Wilder;
that they breached this fiduciary duty, and this breach was both the actual and

proximate cause of the invalid termination of her 13-week extension with placement at DCH.

3. Genie had a fiduciary relationship with Wilder, breached this fiduciary duty, and this breach was both the actual and proximate cause of the invalid termination of her 13-week extension with placement at DCH, performance of which was to take place from January 17, 2021, through May 29, 2021.

4. Alabama case law has held fiduciary relationships are not restricted to such confined relations as trustee and beneficiary, partners, principal and agent, guardian and ward, management directors and corporation, etc. Rather, responsibilities of a fiduciary flow to "all persons who occupy a position out of which the duty of good faith ought in equity and good conscience to arise. It is the nature of the relation which is to be regarded, and not the designation of the one filling the relation. *(Line v. Ventura, 38 So. 3d 1 (Ala. 2009).*

5. PLAINTIFF Wilder placed trust in the faithful integrity of Genie, Genie's recruiter, and Venkat Nadipelly.

6. As a result of PLAINTIFF Wilder's trust in the integrity of the above-noted parties, those parties were in a position of superiority or influence over her. It was, in fact, this influence that caused Wilder to agree to contract for the new 13-week extension.

7. DEFENDANTS assumed control and responsibility as to Wilder's travel nurse contract with DCH for the period January 17, 2021, through May 29, 2021.

8. DEFENDANTS had a duty to act for or advise PLAINTIFF Wilder on matters that fell within the scope of their relationship. Wilder attests that she was contacted and advised to sign this extension contract early to guarantee her payment at a higher crisis rate. This shows Genie assumed a duty to advise and act for Wilder's benefit.

9. The relationship between DEFENDANTS and PLAINTIFF Wilder was specific and should be recognized as involving fiduciary duties.

10. Damages in the breach of fiduciary duty are not nominal.

## G. COUNT SEVEN: BREACH OF FIDUCIARY DUTY BY AYA HEALTHCARE

1. PLAINTIFFS incorporate each and every allegation as set forth hereinabove and repeat and reallege such averments hereinafter with force and effect.

2. PLAINTIFFS assert that Aya had a fiduciary relationship with Gilia Wilder, and that they breached this fiduciary duty in its negligent handling and non-delivery of the contract between Wilder and Genie. This breach was both the actual and proximate cause of the failure to perform Wilder's 13-week extension with placement at DCH.

3. Aya Healthcare had a fiduciary relationship with Wilder, breached this fiduciary duty, and this breach was both the actual and proximate cause of the invalid termination of her 13-week extension with placement at DCH, performance of which was to take place from January 17, 2021, through May 29, 2021.

4. Alabama case law has held fiduciary relationships are not restricted to such confined relations as trustee and beneficiary, partners, principal and agent, guardian and ward, management directors and corporation, etc. Rather, responsibilities of a fiduciary flow to "all persons who occupy a position out of which the duty of good faith ought in equity and good conscience to arise. It is the nature of the relation which is to be regarded, and not the designation of the one filling the relation. *(Line v. Ventura, 38 So. 3d 1 (Ala. 2009).*

5. PLAINTIFF Wilder placed trust in the faithful integrity of Aya Healthcare, which she knew was handling the contract between herself and Genie.

6. As a result of PLAINTIFF Wilder's trust in the integrity of the above-noted parties, those parties were in a position of superiority or influence.

7. DEFENDANTS assumed control and responsibility as to Wilder's travel nurse contract with DCH for the period January 17, 2021, through May 29, 2021.

8. DEFENDANTS had a duty to act for or advise PLAINTIFF Wilder on matters that fell in the scope of their relationship. Wilder attests she was never contacted by Aya Healthcare and advised of their failure to timely and properly deliver her contract to DCH. In its agreed-to and assumed duty to handle Wilder's contract, Aya had a duty to act for Wilder's benefit. Because they were negligent in this performance of their fiduciary duty, Wilder's contract ended without reasonable

12 of 15

notice.

9. The relationship between DEFENDANTS and PLAINTIFF Wilder was specific and involved fiduciary duties.

10. Damages in the breach of fiduciary duty are not nominal.

## DEMAND FOR JURY TRIAL

PLAINTIFFS demand a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

Wherefore, PLAINTIFFS request the Court enter judgment against DEFENDANTS as follows:

1. For PLAINTIFFS' general and special damages;

2. For PLAINTIFFS' costs incurred in pursuing these claims;

3. For pre-judgment and post-judgment interest to the extent provided by law;

4. For a charge of $100 per day, for each day after a default judgment is entered, DEFENDANTS fail to remit to PLAINTIFFS any judgment due; and

5. For such further relief as the Court deems just and fair, including but not limited to relief for mental anguish and punitive damages.

## **VERIFICATION**

STATE OF ALABAMA          )

TUSCALOOSA COUNTY          )

Before me, the undersigned authority, a Notary Public in and for said State at large, personally appeared GILIA WILDER and PATRICK WARREN, Petitioners in the above-styled cause, who are personally known to me and who, being first duly sworn both depose and say they have read the foregoing statements, and that said statements are true and correct to the best of their knowledge, information, and belief.

GILIA WILDER, Plaintiff

PATRICK WARREN, Plaintiff

Sworn to and subscribed before me on this the $\underline{20}$ day of $\underline{\text{August}}$ , 2021.

NOTARY PUBLIC

My commission expires: **7-6-2022**

Respectfully submitted this $\underline{20}$ day of $\underline{\text{August}}$ , 2021.

**ERICA K. KEMMER (BOO038)**
**Attorney for Plaintiffs**

14 of 15

**OF COUNSEL:**

Law Office of Erica Kemmer, LLC
P.O. Box 592
Moundville, AL  35474
Phone: (205) 450-9185
Email: ericakkemmer@gmail.com

**SERVICE VIA CERTIFIED MAIL**

15 of 15



AlaFile E-Notice

63-CV-2021-900865.00
Judge: DANIEL F PRUET

To: KEMMER ERICA KATHLEEN
ericakkemmer@gmail.com

# NOTICE OF SERVICE

IN THE CIRCUIT COURT OF TUSCALOOSA COUNTY, ALABAMA

GILIA WILDER ET AL V. GENIE HEALTHCARE, INC. ET AL
63-CV-2021-900865.00

The following matter was served on 10/6/2021

**D005 DCH HEALTHCARE AUTHORITY DCH**

**Corresponding To**

CERTIFIED MAIL

MAGARIA HAMNER BOBO
CIRCUIT COURT CLERK
TUSCALOOSA COUNTY, ALABAMA
714 GREENSBORO AVENUE
TUSCALOOSA, AL, 35401

205-349-3870
magaria.bobo@alacourt.gov



**AlaFile E-Notice**

63-CV-2021-900865.00
Judge: DANIEL F PRUET

To: KEMMER ERICA KATHLEEN
ericakkemmer@gmail.com

# NOTICE OF SERVICE

IN THE CIRCUIT COURT OF TUSCALOOSA COUNTY, ALABAMA

GILIA WILDER ET AL V. GENIE HEALTHCARE, INC. ET AL
63-CV-2021-900865.00

The following matter was served on 10/8/2021

**D001 GENIE HEALTHCARE, INC.**
**Corresponding To**
CERTIFIED MAIL

MAGARIA HAMNER BOBO
CIRCUIT COURT CLERK
TUSCALOOSA COUNTY, ALABAMA
714 GREENSBORO AVENUE
TUSCALOOSA, AL, 35401

205-349-3870
magaria.bobo@alacourt.gov



**AlaFile E-Notice**

63-CV-2021-900865.00
Judge: DANIEL F PRUET

To: KEMMER ERICA KATHLEEN
ericakkemmer@gmail.com

# NOTICE OF SERVICE

IN THE CIRCUIT COURT OF TUSCALOOSA COUNTY, ALABAMA

GILIA WILDER ET AL V. GENIE HEALTHCARE, INC. ET AL
63-CV-2021-900865.00

The following matter was served on 10/8/2021

**D002 NADIPELLY VENKAT**
**Corresponding To**
CERTIFIED MAIL

MAGARIA HAMNER BOBO
CIRCUIT COURT CLERK
TUSCALOOSA COUNTY, ALABAMA
714 GREENSBORO AVENUE
TUSCALOOSA, AL, 35401

205-349-3870
magaria.bobo@alacourt.gov

Case 7:21-cv-01480-LSC  Document 1-1  Filed 11/04/21  Page 25 of 43



**AlaFile E-Notice**

63-CV-2021-900865.00
Judge: DANIEL F PRUET

To:  TERRI OLIVE TOMPKINS
ttompkins@rosenharwood.com

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF TUSCALOOSA COUNTY, ALABAMA

GILIA WILDER ET AL V. GENIE HEALTHCARE, INC. ET AL
63-CV-2021-900865.00

The following matter was FILED on 11/3/2021 2:15:16 PM

**D005 DCH HEALTHCARE AUTHORITY DCH**
MOTION TO DISMISS PURSUANT TO RULE 12(B)
[Filer: TOMPKINS TERRI OLIVE]

Notice Date:     11/3/2021 2:15:16 PM

MAGARIA HAMNER BOBO
CIRCUIT COURT CLERK
TUSCALOOSA COUNTY, ALABAMA
714 GREENSBORO AVENUE
TUSCALOOSA, AL, 35401

205-349-3870
magaria.bobo@alacourt.gov

ELECTRONICALLY FILED
11/3/2021 2:15 PM
63-CV-2021-900865.00
CIRCUIT COURT OF
TUSCALOOSA COUNTY, ALABAMA
MAGARIA HAMNER BOBO, CLERK

| **STATE OF ALABAMA** | **Revised 3/5/08** | | Cas | |
|---|---|---|---|---|
| Unified Judicial System | | | | |
| 63-TUSCALOOSA | ☐ District Court | ☑ **Circuit Court** | CV2 | |

**CIVIL MOTION COVER SHEET**

GILIA WILDER ET AL V. GENIE HEALTHCARE, INC. ET AL

*Name of Filing Party:*D005 - DCH HEALTHCARE AUTHORITY DCH

| *Name, Address, and Telephone No. of Attorney or Party. If Not Represented.* | ☐ Oral Arguments Requested |
|---|---|
| TERRI OLIVE TOMPKINS | |
| 2200 Jack Warner Parkway Suite 200 | |
| TUSCALOOSA, AL 35401 | |
| *Attorney Bar No.:* TOM013 | |

**TYPE OF MOTION**

| **Motions Requiring Fee** | **Motions Not Requiring Fee** |
|---|---|
| ☐ Default Judgment ($50.00) | ☐ Add Party |
| ☐ Joinder in Other Party's Dispositive Motion (i.e.Summary Judgment, Judgment on the Pleadings, orother Dispositive Motion not pursuant to Rule 12(b)) ($50.00) | ☐ Amend |
| | ☐ Change of Venue/Transfer |
| | ☐ Compel |
| ☐ Judgment on the Pleadings ($50.00) | ☐ Consolidation |
| ☐ Motion to Dismiss, or in the Alternative SummaryJudgment($50.00) | ☐ Continue |
| | ☐ Deposition |
| ☐ Renewed Dispositive Motion(Summary Judgment,Judgment on the Pleadings, or other DispositiveMotion not pursuant to Rule 12(b)) ($50.00) | ☐ Designate a Mediator |
| | ☐ Judgment as a Matter of Law (during Trial) |
| | ☐ Disburse Funds |
| ☐ Summary Judgment pursuant to Rule 56($50.00) | ☐ Extension of Time |
| ☐ Motion to Intervene ($297.00) | ☐ In Limine |
| ☐ Other | ☐ Joinder |
| pursuant to Rule _____ ($50.00) | ☐ More Definite Statement |
| | ☑ Motion to Dismiss pursuant to Rule 12(b) |
| *Motion fees are enumerated in §12-19-71(a). Fees pursuant to Local Act are not included. Please contact the Clerk of the Court regarding applicable local fees. | ☐ New Trial |
| | ☐ Objection of Exemptions Claimed |
| ☐ Local Court Costs $ 0 | ☐ Pendente Lite |
| | ☐ Plaintiff's Motion to Dismiss |
| | ☐ Preliminary Injunction |
| | ☐ Protective Order |
| | ☐ Quash |
| | ☐ Release from Stay of Execution |
| | ☐ Sanctions |
| | ☐ Sever |
| | ☐ Special Practice in Alabama |
| | ☐ Stay |
| | ☐ Strike |
| | ☐ Supplement to Pending Motion |
| | ☐ Vacate or Modify |
| | ☐ Withdraw |
| | ☐ Other |
| | pursuant to Rule _____ (Subject to Filing Fee) |

| Check here if you have filed or are filing contemporaneously with this motion an Affidavit of Substantial Hardship or if you are filing on behalf of an agency or department of the State, county, or municipal government. (Pursuant to §6-5-1 Code of Alabama (1975), governmental entities are exempt from prepayment of filing fees) ☐ | Date:<br>11/3/2021 2:04:59 PM | Signature of Attorney or Party<br>/s/ TERRI OLIVE TOMPKINS |
|---|---|---|

*This Cover Sheet must be completed and submitted to the Clerk of Court upon the filing of any motion. Each motion should contain a separate Cover Sheet.
**Motions titled 'Motion to Dismiss' that are not pursuant to Rule 12(b) and are in fact Motions for Summary Judgments are subject to filing fee.



ELECTRONICALLY FILED
11/3/2021 2:15 PM
63-CV-2021-900865.00
CIRCUIT COURT OF
TUSCALOOSA COUNTY, ALABAMA
MAGARIA HAMNER BOBO, CLERK

## IN THE CIRCUIT COURT OF TUSCALOOSA COUNTY, ALABAMA

| | |
|---|---|
| **GILIA WILDER and** | ) |
| **PATRICK WARREN,** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **v.** | ) **CASE NO. CV-2021-900865.00** |
| | ) |
| **GENIE HEALTHCARE, Inc.,** | ) |
| **VENKAT NADIPELLY,** | ) |
| **AYA HEALTHCARE, INC.,** | ) |
| **ALAN BRAYMIN,** | ) |
| **THE DCH HEALTH CARE** | ) |
| **AUTHORITY, et al.,** | ) |
| | ) |
| **Defendants.** | ) |

## DEFENDANT DCH'S MOTION TO DISMISS

Defendant The DCH Health Care Authority d/b/a DCH Regional Medical Center

("DCH") moves the Court to dismiss all of the Plaintiffs' claims against it as the

Complaint fails to state a claim upon which relief may be granted as to this Defendant

pursuant to Rule 12(b)(6) of the Alabama Rules of Civil Procedure.

**I. Wilder's claims for Breach of Contract (Count One) and Reliance on a Contractual Promise (Count Two) do not state a claim against DCH.**

First, although Wilder pleads Counts One and Two against "Defendants"

collectively without specificity, these Counts are undoubtedly alleged solely against

Defendants Genie Healthcare, Inc and/or Venkat Nadipelly. (Complaint, ¶¶ A:1-12, B:1-

9). First, Count One's allegations plainly demonstrate that Wilder only intends to assert

her claim for breach of contract against Genie and Nadipelly. To be specific, Count One

alleges that an "employment contract [was signed] between Genie and Plaintiff, Gilia

Wilder," "[a] valid offer was made to Wilder by Genie to enter into a contract," and

1

"Wilder accepted this offer from Genie by signing the offered contract." (Complaint, ¶
A:1, 4-5). Wilder also alleges that "Genie president and CEO, Venkat Nadipelly, signed
the same contract as Wilder." (Complaint, ¶ A:6). Count One does not mention DCH, that
Wilder had a contract with DCH, or that DCH breached any contract. (Complaint, ¶ A:1-
12).

Even had Plaintiffs alleged breach of contract against DCH (which they do not),
this claim would not be viable. Count One alleges Genie and/or Nadipelly breached an
employment contract with Wilder. (Complaint, ¶ A:1, 10-12). Plaintiffs do not allege that
DCH is a party to or involved in the employment contract between Genie and Plaintiff
Wilder. One not a party to a contract cannot be sued for breach of that contract. See e.g.
Roland v. Cooper, 768 So. 2d 400, 404 (Ala. 2000). Therefore, Count One is inapplicable to
DCH.

Likewise, Plaintiffs' claim for reliance on a contractual promise (Count Two) does
not state a claim against DCH. Count Two alleges that Plaintiffs "took specific actions in
reliance on the contract *executed between Wilder and Genie.*" (Complaint, ¶ B:2) (emphasis
added). Count Two pertains entirely to the employment contract between Wilder and
Genie. (Complaint, ¶ B:1-9).

## II.    Counts One and Two are due to be dismissed as to Plaintiff Warren, as he has no standing to bring these claims.

The Complaint makes clear that *Plaintiff Wilder* contracted with Genie for her
employment as an ICU travel nurse. (Complaint, ¶¶ I-III). Yet, Counts One and Two
allege that both "Plaintiffs" suffered damages as a result of the breach of Wilder's

2

employment contract. (Complaint, ¶¶ A:12, B:9). Warren is a stranger to the contract between Wilder and Genie. As a stranger to the contract, Warren has "no standing to complain about an alleged breach" of the contract. See Dunning v. New England Life Ins. Co., 890 So. 2d 92, 97 (Ala. 2003); see also Roland, 768 So. 2d at 404. Wilder cannot, therefore, assert any claim on behalf any contract mentioned in the Complaint, he is a stranger to all of the contracts.

## III. Count Three against DCH is due to be dismissed because neither Wilder nor Warren are intended beneficiaries of the DCH-Aya Agreement.

Count Three contends that Wilder is "an intended third-party beneficiary of any and all premise(s) and contracts between all Defendants...that pertain to Wilder's employment contract ... includ[ing] contracts or promises that in any way touch Genie's contractual obligations to Wilder between any and all of the following: Genie, Venkat Nadipelly, Aya Healthcare, Inc., Alan Braymin, and DCH." (Complaint, ¶ C:2). The contract to which Plaintiffs refer concerning DCH is the Supplemental Staffing Agreement between DCH and Aya. (Agreement attached as Exhibit 1).[1]

Wilder attempts to allege a breach of contract claim as a third-party beneficiary; she is not a party to the Supplemental Staffing Agreement. Under Alabama law, such a claim fails as a matter of law unless the plaintiff shows: "1) that the contracting parties

---

[1] When a document – such as the Agreement between DCH and Aya – "is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss" without converting the motion to dismiss into one for summary judgment. See Bell v. Smith, 281 So. 3d 1247, 1252 (Ala. 2019) (internal quotations and citation omitted). Here, DCH's Agreement with Aya is referenced and central to Plaintiffs' intended beneficiary claim.

3

intended, at the time the contract was created, to bestow a direct benefit upon a third party, 2) that the complainant was the intended beneficiary of the contract, and 3) that the contract was breached." See Sheetz, Aiken & Aiken, Inc. v. Spann Hall, Ritchie, Inc., 512 So. 2d 99, 101-02 (Ala. 1987). Wilder is not an intended beneficiary of the Agreement between Aya and DCH.

"It is well-established in this jurisdiction that one who seeks recovery in contract as a third-party beneficiary must establish that the contract was intended for his *direct, as opposed to incidental*, benefit." See Zeigler v. Blount Bros. Constr. Co., 364 So. 2d 1163, 1166 (Ala. 1978) (citation omitted) (emphasis added). Plaintiffs have done nothing more than make the conclusory statement that "Wilder is an intended beneficiary of any and all promise(s) and contracts between all Defendants…that pertain to Wilder's employment contract," and that "Wilder's intended-beneficiary rights are tied solely to the contract(s) from which she was intended to benefit." (Complaint, ¶ C:2, 8). These statements directly contradict DCH's Agreement with Aya, which does not mention the benefit of any third parties. (Exhibit 1). DCH and Aya entered into the Agreement because DCH "desires Aya to provide…healthcare providers to client." (Exhibit 1, p. 1). The clear manifestation of the parties' intent from this Agreement is to benefit DCH by providing healthcare workers, not to directly benefit the healthcare workers (Wilder). (Exhibit 1). This lack of direct concern, and thus direct benefit, for the healthcare workers distinguishes Plaintiffs' claim from that in H.R.H. Metals, Inc. v. Miller, for example, where an injured employee was held to be an intended beneficiary in light of an explicit contractual provision reflecting the parties' intention to bestow a benefit of protection from injury on the

4

employees themselves. 833 So. 2d 18, 25 (Ala. 2002). Here, Plaintiffs have asserted no specific factual allegations supporting their conclusion that Wilder is an intended beneficiary.

At best, Wilder is an indirect, incidental beneficiary, which is legally insufficient to state an intended beneficiary claim. In Zeigler v. Blount Bros. Constr. Co., the Court affirmed a dismissal of an intended beneficiary claim brought by Alabama ratepayers who alleged they were paying higher power rates because of a failed contract between the State and a construction contractor. 364 So. 2d 1163, 1165 (Ala. 1978). The Court concluded that the plaintiffs were not intended beneficiaries because "[t]here is nothing contained in these contracts which suggests that in their making the power company was directly concerned with the amount of money subscribers for electrical power would be charged each month." See id. at 1166. Rather, the Court recognized that "[p]erformance of the contracts would, and did, result in an enhancement of [defendant's] real and riparian property holdings, to the direct benefit of the corporation itself. ... At best, therefore, the plaintiffs are not direct, but only incidental beneficiaries who claim the loss of an economic benefit based upon the alleged failure of a promised performance by a party contractually bound to another." See id.; see also DuPont v. Yellow Cab Co. of Birmingham, 565 So. 2d 190, 192 (Ala. 1990) (holding plaintiff-bus driver was not an intended beneficiary of a contract that provided solely for the transportation of students to and from school; the students were the only direct beneficiaries of the contract); Anderson v. Howard Hall Co., 179 So. 2d 71, 75 (Ala. 1965) (contractual provision that "could prove beneficial to third persons" upon the parties' execution of the contract "does

5

not...justify the further conclusion that the requirements as to liability insurance were inserted into the lease contract for the direct benefit of such third persons, as distinguished from a mere incidental benefit").

Similarly, here, the DCH-Aya Agreement does not bestow a direct benefit upon Wilder or any other healthcare provider; rather, the Agreement serves the sole purpose of benefitting DCH. (Exhibit 1). Wilder may incidentally benefit from this Agreement by her placement at DCH for temporary employment, but this indirect relationship is insufficient to state an intended beneficiary claim. Because Wilder is not an intended third-party beneficiary of the DCH-Aya Agreement, Count Three, therefore, fails as a matter of law pertaining to DCH.[2]

Although the substance of Count Three pertains only to Wilder, the final paragraph of Count Three alleges that "[a]s a result of Wilder's intended beneficiary status, and the failure of Defendants to perform, *Plaintiffs* suffered reliance damages, expectation damages and mental anguish." (Complaint, ¶ C:11) (emphasis added). From this allegation, it appears that Warren also asserts a claim under Count Three. This claim fails for three reasons. First, a diligent search of Alabama law revealed no viable claim in which a plaintiff can bring suit based on another's third party beneficiary status. Second,

---

[2] Count Three is equally inadequate pertaining to DCH, as it fails to satisfy the third essential element of an intended beneficiary claim – that the contract was breached. See Sheetz, 512 So. 2d at 102. As discussed above, Plaintiffs' breach of contract claim does not mention any contract pertaining to DCH, much less that DCH breached any contract. Thus, there are no allegations – nor could there be – of any contractual provision of which Plaintiff deems DCH to be in breach. For this additional reason, Plaintiffs' intended beneficiary claim fails.

6

even if such claim were viable, Wilder is not an intended beneficiary of the DCH-Aya Agreement, for above-stated reasons. Accordingly, Warren would not be entitled to damages tailgating Wilder's nonexistent beneficiary status. Third, to the extent Warren is claiming he is an intended beneficiary to the DCH-Aya Agreement, this claim is entirely misplaced. Count Three contains no allegations as to how Warren is an intended beneficiary the DCH-Aya Agreement. (Complaint, ¶ C:1-11). In addition, the DCH-Aya Agreement contains no language even remotely related to bestowing a direct benefit on a healthcare worker's spouse. (Exhibit 1). At best, Warren incidentally benefitted from Wilder's placement at DCH via her contract with Genie. This incidental benefit is so far removed from the direct benefit provided solely to DCH via its Agreement with Aya. Warren, therefore, has no viable intended beneficiary claim relating to the DCH-Aya Agreement. Resultantly, any claim Warren asserts against DCH under Count Three is due to be dismissed.

## IV.    Plaintiffs' negligence claim (Count Four) against DCH fails as a matter of law and is due to be dismissed because DCH owes no duty to Plaintiffs.

The threshold question in all negligence claims is whether the defendant owed a duty to the complaining party as a "foreseeable plaintiff." See Martin v. Arnold, 643 So. 2d 564, 567 (Ala. 1994). Duty is strictly a question of law and should be decided by the court. See Rose v. Miller & Co., Inc., 432 So. 2d 1237, 1238 (Ala. 1983). "It is elementary that where there is no duty, there can be no negligence." See id. at 1238-39.

As pled, Plaintiffs' negligence claim is unclear. Plaintiffs essentially claim that Defendants negligently performed the contract between Wilder and Genie, and the

7

negligent handling of such contract "was an affirmative act giving rise to a duty to the intended beneficiary of the contract, who was and is Wilder." (Doc. 2, ¶ D:3-4). As this claim relates to DCH, it appears that Plaintiffs claim DCH was negligent as to Wilder's employment contract with Genie. This claim, however, is not logical, as DCH has no involvement whatsoever in Wilder's contract with Genie. In the event Plaintiffs are somehow claiming that DCH negligently handled or performed its Agreement with Aya, entitling Plaintiffs to recover as third parties, this claim also fails because DCH owes no duty to Plaintiffs in its Agreement with Aya.[3]

In Alabama, the general rule is that "where the charge of negligence is based upon a breach of duty arising out of a contractual relationship, no cause of action arises in favor of one not privy to the contract." See Aliant Bank, a Div. of USAmeribank v. Four Star Inv., Inc., 244 So. 3d 896, 917 (Ala. 2017). However, as an exception to this general rule, a plaintiff "may recover in negligence for defendant's breach of duty where defendant negligently performs his contract with knowledge that *others are relying* on proper performance and the resulting harm is reasonably foreseeable." See Cincinnati Ins. Cos. v. Barber Insulation, Inc., 946 So. 2d 441, 446-47 (Ala. 2006) (internal quotations and

---

[3] To be noted, Count Four also alleges that Defendants are liable under the doctrine of *res ipsa loquitur*. *Res ipsa loquitur* is inapplicable here. For *res ipsa* to apply, Plaintiffs must show, in pertinent part, that their injuries in no way could have occurred absent negligence solely on the part of DCH. See Carrio v. Denson, 689 So. 2d 121, 123 (Ala. Civ. App. 1996). Plaintiffs' allegations do not implicate *res ipsa*, as they contend all Defendants collectively handled Wilder's employment contract with Genie negligently. (Complaint, ¶ D:11-12). To this end, *res ipsa* is inapplicable because the Complaint makes clear that the Plaintiffs' injuries could have occurred without negligence by DCH. See Nettles v. Pettway, 306 So. 3d 873 (Ala. 2020).

citation omitted) (emphasis in original). The Supreme Court of Alabama has made clear that the key to liability under this exception is the plaintiff's *"particularized reliance"* on the contracting parties' performance. See Barber, 946 So. 2d at 448 (emphasis added). In other words, for contracting parties to owe a duty to an unrelated third-party plaintiff as to their own contract performance, the plaintiff must allege that (s)he relied specifically on the contract at issue and how such reliance occurred. See id. at 448-49.

Barber is particularly instructive in demonstrating this rule. In Barber, the Fains (homeowners) contracted with Dark Alexander & Company (general contractor) to construct their lake house. See id. at 442. Dark subsequently contracted with Barber (defendant) as a subcontractor to install insulation for the house. See id. A water pipe burst in the Fains' house, causing flooding. See id. Cincinnati Insurance (plaintiffs) reimbursed the Fains for the damage and sued Barber for negligence in the performance of the contract between Barber and Dark. See id. at 445-46. Cincinnati argued that Barber had a duty to properly install the insulation and that the Fains relied on the contract between Dark and Barber. See id. at 446. The Court affirmed dismissal of Cincinnati's negligence claim, holding that the Fains were too far removed from Barber to have any "particularized reliance" on the contract between Barber and Dark. See id. at 447-49. In fact, the Court held that "it was Dark – not the Fains – that relied on Barber. The Fains relied on Dark, not Barber." See id. at 449; see also Glasgow v. Jackson Land Surv., LLC, 236 So. 3d 111, 116-17 (Ala. 2017) (dismissing plaintiff-landowner's negligence claim for failure to state a claim, where he alleged he was a third party to a surveyor's land survey contract with his neighbor but did not allege that he had detrimentally relied on the

9

survey); Aliant Bank, 244 So. 3d at 917-19 (plaintiff had no negligence claim based on a management agreement between a town's development district and a management company, as the management company provided services solely to the district, the plaintiff "played no part in that relationship," and the district, not the plaintiff, relied on the agreement); but see Berkel & Co. Cont., Inc. v. Providence Hosp., 454 So. 2d 496, 502-03 (Ala. 1984) (finding valid negligence claim against defendant for breach of a contractual duty where plaintiff's *own contractual performance* depended on the care exercised by defendant).

In light of Barber, Glasgow, and Aliant Bank, it is evident that Plaintiffs' negligence claim, as alleged against DCH, is due to be dismissed. Specifically pertaining to Wilder, Count Four contains no allegations that she relied on the DCH-Aya Agreement in her *own contractual performance* with Genie. (Doc. 2, ¶ D:1-15). In fact, Count Four does not specifically mention the DCH-Aya Agreement. (Doc. 2, ¶ D:1-15). Instead, Wilder merely alleges in conclusive fashion that Defendants were negligent with regard to her employment contract and negligently handled her contract with Genie. (Doc. 2, ¶ D:4, 6, 8). Count Four mentions DCH only one time, contending that "[a] reasonable level of care in performing the contract would have included a means of verifying whether Wilder's employment contract was received in a timely and proper manner by DCH." (Doc. 2, ¶ D:1-15). But, this one allegation fails to contend Wilder relied in any way on DCH's Agreement with Aya. Just as the homeowners in Barber had no relationship with the subcontractor, it is apparent that Wilder had no direct relationship with DCH. Wilder's employment was secured strictly through Genie, not DCH or Aya. (Doc. 2, ¶¶ I-III).

10

Wilder fails to state how her own contractual performance with Genie has any "particuarlized reliance" on *DCH's Agreement with Aya*. As was the case in Aliant Bank, Aya provides supplemental healthcare services to DCH. Wilder "played no part in that relationship." Such lack of alleged specific reliance on the DCH-Aya Agreement renders Wilder's negligence claim against DCH due to be dismissed.[4] See Barber, 946 So. 2d at 449; Glasgow, 236 So. 3d at 116-117; Aliant Bank, 244 So. 3d at 917-19.

As with Count Three, Count Four is also asserted on Warren's behalf. Count Four contains no allegations detailing how Warren relied on the DCH-Aya Agreement. Just as the homeowners in Barber were too far removed to have any "particularized reliance" on the contract between the general contractor and subcontractor, Warren is far too removed from the DCH-Aya Agreement to have particularly relied on it. Warren is the spouse of Wilder, who contracted with Genie for employment, who contracted with Aya, who, in turn, contracted with DCH for placement. Any reliance Warren could have had on the DCH-Aya Agreement (which is not set forth in Count Four) is so remote as to insufficiently state a claim for any alleged negligence on behalf of DCH in the performance of its Agreement with Aya. See Barber, 946 So. 2d at 449; Aliant Bank, 244 So. 3d at 917-19. As a result, Count Four is due to be dismissed as Warren's negligence claim against DCH.

---

[4] As with Count Three, Count Four is also due dismissal on the grounds that Plaintiff has fails to present any facts that DCH acted negligent under its Agreement with Aya. Absent any allegations that DCH negligently breached or performed its Agreement with Aya, there can be no negligence claim. See Martin, 643 So. 2d at 567 (defendant's breach of an owed duty is required of a valid negligence claim).

11

## V.   Plaintiffs' Loss of Consortium claim (Count Five) is due to be dismissed because Plaintiffs' alleged injuries were not caused by wrongful acts of DCH.

Plaintiffs also assert a claim for loss of consortium, alleging that "Plaintiffs Gilia Wilder and Patrick Warren bring this action for loss of consortium, a foreseeable result of the negligent handling of Wilder's travel nurse contract by Defendants." (Complaint ¶ E:2). Plaintiffs allege that the breach of Wilder's employment contract caused a suspension in Wilder's and Warren's fertility treatments. (Complaint, ¶ X).

First, Count Five is due dismissal as to Wilder because "[a] loss of consortium claim is a derivative claim *of a noninjured spouse*, arising out of the injury to the injured spouse." See Jenkins v. St. Farm Mut. Auto. Ins. Co., 30 So. 3d 414, 418 (Ala. 2008) (emphasis added). A loss of consortium claim belongs only to the injured party's spouse, not to the injured party. See Price v. S. Ry. Co., 470 So. 2d 1125, 1130 (Ala. 1985). Thus, Wilder has no standing to bring a loss of consortium claim here, as the claim belongs solely to Warren. Count Five, therefore, is due to be dismissed as to Wilder.

Count Five is also due dismissal as to Warren because a consortium claim "is a derivative claim that depends on the establishment of the tortfeasor's liability." See Jenkins, 30 So. 3d at 418. To recover, Warren must show that Wilder's injury was caused by DCH's wrongful acts and that, as a result, Warren lost Wilder's consortium from the time of the injury. See Georgia Power Co. v. Partin, 727 So. 2d 2, 6 (Ala. 1998) (citing Mattison v. Kirk, 497 So. 2d 120, 123 (Ala. 1986)). Here, Wilder's only personal injury claim relating to DCH is the negligence claim (Count Four) and, for reasons discussed above, Count Four fails against DCH. Therefore, there is no claim for physical injury to

12

Wilder on which Warren can rely as a basis for claiming loss of consortium. Thus, the claim for loss of consortium is not credible, and DCH is entitled to dismissal of Count Five.

## VI. Plaintiffs' Complaint is due to be dismissed for improper service on DCH.

Plaintiffs improperly attempted to serve DCH via certified mail by addressing the Summons to "The DCH Healthcare Authority, 809 University Blvd. East, Tuscaloosa, AL 35401." (Doc. 6, p. 1).

Because the Summons was directed and addressed to the hospital corporation and not a natural person, service has not been perfected on this corporate defendant. Alabama Rule of Civil Procedure 4(c)(6) requires that service of process may only be perfected on a corporation "by serving an officer, partner [ ], managing or general agent, or any agent authorized by appointment or by law to receive service of process." ALA. R. CIV. P. 4(c)(6); see also Johnson v. Hall, 10 So. 3d 1031, 1036-37 (Ala. Civ. App. 2008) (noting that Rule 4 requires that certified mail service for a corporation must be directed to the registered or appointed agent or a specific person, such as an officer). To date, Plaintiff has not perfected service on Defendant. Plaintiff's attempt to serve DCH by naming the hospital, rather than the registered agent, is improper, and subjects the Complaint to dismissal. See Woodruff Brokerage Co., Inc. v. Beatty, 297 So. 3d 354, 358 (Ala. 2019) (finding service on corporate defendant was improper because the address card was directed to the corporation and not a natural person as registered agent; "the certified-mail return receipt was addressed merely to Woodruff Brokerage and was not addressed to an individual as required by Rule 4(c)(6).").

13

WHEREFORE, premises considered, DCH respectfully requests that this Court

enter an Order dismissing all claims against DCH.

Respectfully submitted,

TERRI OLIVE TOMPKINS (TOM-013)
ALEXANDRA SEGREST MONTGOMERY (SEG-021)

**/s/ TERRI OLIVE TOMPKINS**

Rosen Harwood, P.A.
Attorney for Defendant DCH Health Care Authority
Rosen Harwood, P.A.
2200 Jack Warner Parkway, Suite 200
Tuscaloosa, Alabama 35401
ttompkins@rosenharwood.com

14

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing pleading or paper has been served upon:

Erica Kemmer
Law Office of Erica Kemmer, LLC
P.O. Box 592
Moundville, AL 35474
ericakkemmer@gmail.com

Genie Healthcare, Inc.
104 Interchange Plaza
Monroe, NJ 08831

Venkat Nadipelly
c/o Genie Healthcare, Inc.
104 Interchange Plaza
Monroe, NJ 08831

Aya Healthcare, Inc.
5930 Cornerstone Court West, Suite 300
San Diego, CA 92121

Alan Braymin
c/o Aya Healthcare, Inc.
5930 Cornerstone Court West, Suite 300
San Diego, CA 92121

on this 3rd day of November 2021, by electronically filing, delivering a copy to each, by mailing a copy to each by first class United States Mail, postage prepaid, addressed to them at their last known address or, if no address is known, by leaving it with the Clerk of this Court.

**/S/ TERRI OLIVE TOMPKINS**
Attorney for Defendant DCH

15

Case 7:21-cv-01480-LSC   Document 1-17  Filed 11/04/21   Page 42 of 43

## IN THE CIRCUIT COURT OF TUSCALOOSA COUNTY, ALABAMA

| | |
|---|---|
| **GILIA WILDER and** | ) |
| **PATRICK WARREN,** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **v.** | ) **CASE NO. CV-2021-900865.00** |
| | ) |
| **GENIE HEALTHCARE, Inc.,** | ) |
| **VENKAT NADIPELLY,** | ) |
| **AYA HEALTHCARE, INC.,** | ) |
| **ALAN BRAYMIN,** | ) |
| **THE DCH HEALTH CARE** | ) |
| **AUTHORITY, et al.,** | ) |
| | ) |
| **Defendants.** | ) |

### AFFIDAVIT OF CHRISTOPHER R. JONES

Before me personally appeared the undersigned, who after being duly sworn, says on oath as follows:

My name is Christopher R. Jones. I am over the age of nineteen and mentally competent. I have personal knowledge and recollection of the facts and events hereinafter set forth. I am the General Counsel for The DCH Health Care Authority d/b/a/ DCH Regional Medical Center and have been so employed at all times relevant hereto.

I certify that the Supplemental Staffing Agreement for Healthcare Professionals between DCH and Aya Healthcare attached to the Motion to Dismiss filed on behalf of Defendant DCH is a true and correct copy and was kept in the regular course of business of DCH Regional Medical Center.

FURTHER, AFFIANT SAITH NOT.

1

**Exhibit 1**

AFFIANT:

_____
CHRISTOPHER R. JONES

STATE OF ALABAMA        )(

TUSCALOOSA COUNTY )(

I, the undersigned authority, a Notary Public in and for the said State of Alabama at Large, do hereby certify that Christopher R. Jones, whose name is signed to the foregoing instrument, and who is known to me, acknowledged before me on this date that, being informed of the contents of this document, executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the 3rd day of November, 2021.

_____
Notary Public in and for the State of Alabama at Large
My Commission Expires: _____

ELIZABETH A. BROWN
NOTARY PUBLIC
ALABAMA STATE AT LARGE
COMM. EXP. 01/09/25

2

**Exhibit 1**