# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# WESTERN DIVISION

| | | |
|---|---|---|
| GILIA WILDER, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | 7:21-cv-01480-LSC |
| | ) | |
| GENIE HEALTHCARE, INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM OF OPINION AND ORDER

Before the Court is Plaintiffs' Motion to Remand. (Doc. 8). The motion is fully briefed, and it is ripe for review. For the reasons stated below, Plaintiffs' Motion to Remand is DENIED.

## I.  BACKGROUND

On September 29, 2021, Plaintiffs Gilia Wilder and Patrick Warren ("Plaintiffs" or "Wilder" and "Warren") filed this action against defendants Genie Healthcare, Inc. ("Genie"), Genie's CEO Venkat Nadipelly ("Nadipelly"), Aya Healthcare, Inc. ("Aya"), Aya's President and CEO Alan Braynin ("Braynin"), and The DCH Health Care Authority ("DCH") (collectively, the "Defendants") in the Circuit Court of Tuscaloosa County, Alabama. (Doc. 1–1 at 7). DCH filed a Motion to Dismiss on November 3, 2021 in state court. (Id. at 27). Aya and Braynin filed

their Notice of Removal on November 5, 2021. (Doc. 1). Genie and Nadipelly consented to Aya's and Braynin's removal. (Doc. 1-2 & Doc. 1-3). Plaintiffs then filed a Motion to Remand on November 19, 2021, requesting that this Court remand the case to the Circuit Court of Tuscaloosa County. (Doc. 8). On January 3, 2022, Plaintiffs filed a stipulation of dismissal as to Braynin and Nadipelly. (Doc. 18 & Doc. 19). On January 4, 2022, Braynin and Nadipelly were dismissed from this case. (Doc. 20).

The Plaintiffs are both citizens of Alabama. (Doc. 1-1 at 8). Genie is a U.S.-based national healthcare staffing organization that operates as a domestic profit corporation and has its principal place of business in New Jersey. (*Id.*). Aya is a U.S.-based national healthcare staffing and vendor management organization with its principal place of business in California. (*Id.* at 9). The DCH Health Care Authority is a domestic, non-profit corporation with its principal place of business in Alabama. (*Id.*).

Wilder and Genie entered a contract, creating a 13-week extension period between Wilder and Genie for work as an Intensive Care Unit travel nurse with placement at DCH starting in January of 2021. (*Id.*). Wilder and Nadipelly, Genie's president and CEO, signed the contract on January 21, 2021. (*Id.*). Wilder's extended contract was to run from January 17, 2021, to May 29, 2021. (*Id.* at 10). On

February 25, 2021, Wilder's DCH unit manager contacted Wilder and informed her that DCH had not received her extension contract. (*Id.*) That same day, Wilder's Genie recruiter informed her that DCH had canceled her contract extension. According to the Plaintiffs, DCH personnel informed Wilder that her second contract extension had been sent to the wrong party and that it was too late for DCH to accept the extension by the time the mistake was caught. (*Id.*). Wilder also claims that her Genie recruiter and DCH unit manager were aware that she had started fertility treatments in reliance of securing the contract extension. Because the contract with Genie prohibited Wilder from working at DCH for 12 months after her contract ended, Wilder took a job in Atlanta, Georgia on March 22, 2021. (*Id.* at 11).

## II. STANDARD OF REVIEW

This Court, like all federal courts, is a court of "limited jurisdiction." *Jackson-Platts v. Gen. Elec. Capital Corp.*, 727 F.3d 1127, 1134 (11th Cir. 2013). It is authorized to hear only those cases falling within "one of three types of subject matter jurisdiction: (1) jurisdiction under a specific statutory grant; (2) federal question jurisdiction pursuant to 28 U.S.C. § 1331; or (3) diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)." *PTA-FLA, Inc. v. ZTE USA, Inc.*, 844 F.3d 1299, 1305 (11th Cir. 2016) (quoting *Baltin v. Alaron Trading Corp.*, 128 F.3d 1466, 1469 (11th Cir. 1997)). A defendant may remove an action initially filed in state court to federal court if the

action is one over which the federal court has original jurisdiction. 28 U.S.C. § 1441(a); *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). For removal to be proper, the court must have subject-matter jurisdiction over the action. *See Caterpillar Inc.*, 482 U.S. at 392. Any doubt about the existence of federal jurisdiction "should be resolved in favor of remand to state court." *City of Vestavia Hills v. Gen. Fid. Ins. Co.*, 676 F.3d 1310, 1313 (11th Cir. 2012) (internal citation and quotation marks omitted).

"Fraudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity." *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998). The burden on the removing party to prove fraudulent joinder is a "heavy one." *Stillwell v. Allstate Ins. Co.*, 663 F.3d 1329, 1332 (11th Cir. 2011) (per curiam) (quoting *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997)). "If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court." *Id.* at 1333 (quoting *Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440–41 (11th Cir. 1983), *superseded by statute*, 28 U.S.C. § 1441(a), *on other grounds as recognized in Stillwell*, 663 F.3d at 1333). The pleading standard for surviving fraudulent joinder "is a lax one." *Id.* at 1332–33. Rather than the plausibility standard, which requires

the complaint to "state a claim to relief that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)), a claim of fraudulent joinder can be defeated by a showing that the claim has "a possibility of stating a valid cause of action." *Stillwell*, 663 F.3d at 1333 (quoting *Triggs*, 154 F.3d at 1287).

When assessing possibility, the Eleventh Circuit has stated that "[i]n considering *possible* state law claims, possible must mean more than such a possibility that a designated residence can be hit by a meteor tonight. That is possible. Surely, as in other instances, reason and common sense have some role." *Legg v. Wyeth*, 428 F.3d 1317, 1325 n.5 (11th Cir. 2005) (internal citations omitted). In other words, "[t]he potential for legal liability 'must be reasonable, not merely theoretical.'" *Id.* (quoting *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002)). Further, any ambiguities in the state substantive law must be resolved in the plaintiff's favor. *Stillwell*, 663 F.3d at 1333. "The determination of whether a resident defendant has been fraudulently joined must be based upon the plaintiff's pleadings at the time of removal, supplemented by any affidavits and deposition transcripts submitted by the parties." *Pacheco de Perez v. AT&T Co.*, 139 F.3d 1368, 1380 (11th Cir. 1998). To determine whether the claim possibly states a valid cause of action, the court must look to the pleading standards of the state court

rather than federal court. *Id.* at 1334. The Supreme Court of Alabama has stated that "a Rule 12(b)(6) dismissal is proper only when it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief." *Haywood v. Alexander*, 121 So. 3d 972, 974–75 (Ala. 2013) (quoting *Nance v. Matthews*, 662 So. 2d 297, 299 (Ala. 1993)).

## III. DISCUSSION

In Count One, Plaintiffs bring a claim against all Defendants for breach of contract. In Count Two, Plaintiffs bring a claim against all Defendants for reliance on a contractual promise. In Count Three, Plaintiffs bring a claim against all Defendants for intended beneficiary. In Count Four, Plaintiffs bring a claim against all Defendants for Negligence. In Count Five, Plaintiffs bring a claim against all Defendants for loss of consortium. In Count Six, Plaintiffs bring a claim against Genie for breach of fiduciary duty. In Count Seven, Plaintiffs bring a claim against Aya for breach of fiduciary duty. Thus, the claims against DCH include breach of contract, reliance on a contractual promise, intended beneficiary, negligence, and loss of consortium. Because Plaintiffs and DCH are both residents of Alabama for the purposes of diversity jurisdiction, this case is due to be remanded unless DCH was fraudulently joined. *Stillwell*, 663 F.3d at 1332.

### A. Breach of Contract

Plaintiffs have no possibility of a viable cause of action against DCH for breach of contract. In Alabama, if a party is not a party to a contract, that party cannot be sued for breach of that contract. *See*, *e.g.*, *Roland v. Cooper*, 768 So. 2d 400, 404 (Ala. Civ. App. 2000) (citing *Ligon Furniture Co. v. O.M. Hughes Ins.*, 551 So. 2d 283, 285 (Ala. 1989). In Count One of the Complaint, Plaintiffs allege that DCH breached a contract with Wilder. (Doc. 1–1 at 12). However, the contract allegedly breached in Count One was only "between Genie and the PLAINTIFF, Gilia Wilder." (*Id.*). In fact, Wilder and Genie's president and CEO, Venkat Nadipelly were the only people that Plaintiffs allege signed the contract. (*Id.*). Further, the affidavit of DCH's Vice President of Human Resources establishes that DCH and Wilder never entered a contract for Wilder's employment. (Doc. 25–2 at 2). Thus, because DCH was not a party to the contract that Wilder alleges DCH breached, there is no possibility of a viable claim against DCH for breach of that contract. *Cooper*, 768 So. 2d at 404.

### B. Reliance on a Contractual Promise

Likewise, there is no possibility of a viable cause of action against DCH for reliance on a contractual promise. As stated above, Plaintiffs allege that the reliance interest was based on the performance of a contract executed between Wilder and Genie. (Doc. 1–1 at 13). Plaintiffs have not alleged that DCH was a party to any

contract with Wilder. As such, Plaintiffs have no viable cause of action against DCH for Count Two.

### C. Intended Beneficiary

Wilder argues that she is an intended third-party beneficiary of a contract between Aya and DCH. However, because Wilder is not a direct beneficiary of the agreement between Aya and DCH, there is no possibility of a viable third-party beneficiary claim against DCH.

Alabama courts have held that "if one person makes a promise for the benefit of a third party, such beneficiary may maintain an action thereon, though the consideration does not move from the latter." *Franklin Fire Ins. Co. v. Howard*, 162 So. 683, 684 (1935). To succeed under a third-party beneficiary claim, Wilder must show: "1) that the contracting parties intended, at the time the contract was created, to bestow a direct benefit upon a third party; 2) that the complainant was the intended beneficiary of the contract; and 3) that the contract was breached." *Sheetz, Aiken & Aiken, Inc. v. Spann, Hall, Ritchie, Inc.*, 512 So. 2d 99, 101–02 (Ala. 1987) (internal quotations omitted). To determine whether the contracting parties intended for a third-party to be a direct beneficiary, courts "look[] to the complaints and the surrounding circumstances of the parties to ascertain the existence of that direct benefit." *Locke v. Ozark City Bd. of Educ.*, 910 So. 2d 1247, 1250 (Ala. 2005).

In ascertaining the intent of the parties, Alabama courts "must first look to the contract itself, because while the intention of the parties controls in construing a written contract, the intention of the parties is to be derived from the contract itself where the language is plain and unambiguous." *H.R.H. Metals, Inc. v. Miller*, 833 So. 2d 18, 24 (Ala. 2002) (internal quotations omitted).

There is no third-party beneficiary claim where a third-party is merely an incidental beneficiary. *See Ziegler v. Blount Bros. Constr. Co.*, 364 So. 2d 1163, 1166 (Ala. 1978). In *Ziegler*, the Alabama Supreme Court determined that, in a contract between a power company and a construction company tasked with building a dam, a customer of the power company whose power bill increased after the construction company breached its contract with the power company was not a direct third-party beneficiary. *Id.* The Court did not find any intent of the parties in the contract's language to bestow a direct benefit on customers of the power company and held that the direct benefit was to the power company itself because the performance of the contract would enhance the power company's "real and riparian property holdings . . . ." *Id.*

Wilder argues that this case is like *Locke*, where the Alabama Supreme Court found that a baseball umpire was the direct third-party beneficiary of a contract between a school board and the Alabama High School Athletic Association

(AHSAA). *See Locke*, 910 So. 2d at 1253. In *Locke*, the Alabama Supreme Court looked to the language of the contract, which stated that school principals were to "provide good game administration and supervision by providing . . . adequate police protection." *Id.* In looking at the contract's language and the surrounding circumstances, the Alabama Supreme Court found that hiring police protection would assist "game administration and supervision." *Id.* The Alabama Supreme Court found that the parties intended for the contract to bestow a direct benefit on umpires. *Id.* Plaintiffs argue that like *Locke*, DCH and Aya, "at the time of contracting, knew they were bestowing a direct benefit of employment on a third party," but the Plaintiffs have failed to allege any language in the agreement between Aya and DCH or submit any affidavits which demonstrate such knowledge or intent.

Rather, the contract between Aya and DCH is like the contract in *Ziegler*, where the contract at issue directly benefited the contracting party and merely incidentally benefited a third-party. The contract between Aya and DCH directly benefited DCH because Aya and DCH entered into a Supplemental Staffing Agreement where Aya would "provide health care workers to DCH upon DCH's request." (Doc. 25–2 at 2). The direct benefit bestowed is the provision of healthcare providers from Aya to DCH. Of course, Wilder also receives the incidental benefit of employment from the contract between Aya and DCH, but DCH is the party that

receives the direct benefit from the contract. The Plaintiffs have failed to allege, and the Court did not find, any language in the contract or any surrounding circumstance that shows an intent from DCH or Aya to bestow a direct benefit on Wilder. Because Wilder was not a direct beneficiary under the contract between Aya and DCH, there is no possible viability of a third-party beneficiary claim under Alabama law. *Ziegler*, 364 So. 2d at 1166.

### D. Negligence

Plaintiffs argue that they have a viable negligence claim under a duty arising from a contract. To succeed under a negligence claim, a defendant must owe a duty to the complaining party as a "foreseeable plaintiff." *See Martin v. Arnold*, 643 So. 2d 564, 567 (Ala. 1997). Duty is a question of law for the court to decide. *State Farm Fire and Cas. Co. v. Owen*, 729 So. 2d 834, 842 (Ala. 1998). Generally, "where the charge of negligence is based upon breach of duty arising out of a contractual relationship, no cause of action arises in favor of one not in privity to the contract." *Berkel & Co. Cont., Inc. v. Providence Hosp.*, 454 So. 2d 496, 501 (Ala. 1984). However, there are exceptions and even where a plaintiff cannot recover as a third-party beneficiary, "[a] plaintiff may nevertheless recover in negligence for defendant's breach of duty where defendant negligently performs his contract with knowledge

that others are relying on proper performance and the resulting harm is reasonably foreseeable." *Id.* at 501 (internal quotations and citation omitted).

"Detrimental reliance" is the "cornerstone" for cases that hold that third parties not privy to a contract can recover for the failure of a contracting party to exercise due care. *Barber*, 946 So. 2d at 448. In *Barber*, homeowners contracted with a general contractor to build a new lake house. *Id.* at 442. The general contractor then hired the defendant-subcontractor to install insulation for the house. *Id.* After a pipe froze and burst and caused damage to the homeowners' lake house, the insurance company sued the subcontractor for negligence based on the subcontractor's breach of his duty under the contract with the general contractor to install the insulation. *Id.* at 446. The Court affirmed the dismissal of the plaintiff's claim because the homeowners "fell[] far short of the particularized reliance" standard on the contract between the contractor and subcontractor. The Court noted that it was the general contractor, not the homeowners, who relied on the subcontractor. *Id.* at 449. However, where there is authority and control over a non-contracting third-party, the Court has found a duty to the third-party. *See Providence Hosp.*, 454 So. 2d at 502–03.

Here, the Complaint alleges that all defendants "undertook to perform the contract between Wilder and Genie" and that "[a] reasonable level of care in

performing the contract would have included a means of verifying whether Wilder's employment contract was received in a timely and proper manner by DCH." (Doc. 1-1 at 15). DCH argues that to the extent that Plaintiffs claim DCH acted negligently under the DCH-Aya agreement, the claim is unsustainable because DCH owed no duties to the Plaintiffs under that agreement.

Under *Barber*, Plaintiffs have no possibility of a viable claim of negligence against DCH. Plaintiffs do not allege that DCH breached any duty arising from a contract which DCH and Plaintiffs were parties to. While privity is not necessary to have a possible claim of negligence, neither Count Four, nor the rest of the Complaint, alleges that Wilder had any "particularized reliance" on the DCH-Aya agreement for contractual performance of her agreement with Genie. (*See* Doc. 1-1). Thus, like the homeowners in *Barber*, who could not show any "particularized reliance" on the contract between the contractor and subcontractor, Plaintiffs have failed to allege any "particularized reliance" which would render DCH liable. Moreover, Plaintiffs have failed to allege that DCH had any authority and control over Wilder's performance in her contract with Genie. *Providence Hosp.*, 454 So. 2d at 502–03. Instead, the affidavit by DCH's Vice President of Human Resources establishes that Wilder was never an employee of DCH nor paid directly by them. Accordingly, there is no possible claim of negligence against DCH.

### E. Loss of Consortium

Plaintiffs argue that they have a possibility of a viable loss of consortium claim because of the DCH's negligent handling of Wilder's contract. (Doc. 1–1 at 16). This claim only pertains to Warren because it is derivative of the claims of the underlying personal injury action of the injured spouse. *See Ex parte Progress Rail Servs. Corp.*, 869 So. 2d 459, 462 (Ala. 2003). There is no possible viability for a loss of consortium claim because a physical injury must be alleged, and in Count Five, there is no allegation of a physical injury. *See Slovensky v. Birmingham News Co.*, 358 So. 2d 474, 477 (Ala. Civ. App. 1978) ("[A] recovery of consortium is premised upon a physical injury suffered by the spouse.").

### IV. CONCLUSION

For the reasons stated above, the Plaintiffs' Motion to Remand (Doc. 8) is DENIED.

**DONE** and **ORDERED** on July 12, 2022.

_____
L. Scott Coogler
United States District Judge

206770